**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CHRISTIAN SANDVIG,
*et al.*,

        Plaintiffs,

   v.

WILLIAM P. BARR, in his official capacity
as Attorney General of the United States,

        Defendant.

Case No. 1:16-cv-1368 (JDB)

# **Defendant's Exhibit 7:**

## Defendant's Objections and Responses to Plaintiffs' First Set of Interrogatories

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CHRISTIAN SANDVIG, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 1:16-cv-1368 (JDB) |
| JEFFERSON B. SESSIONS, III, in his official capacity as Attorney General of the United States, | |
| Defendant. | |

**DEFENDANT'S OBJECTIONS AND RESPONSES TO PLAINTIFFS'
FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant hereby objects and responds to Plaintiffs' First Set of Interrogatories.  The following objections are based on information known to Defendant at this time, and are made without prejudice to additional objections should Defendant subsequently identify additional grounds for objection.  Nothing contained in the following responses constitutes a waiver of any applicable objection or privilege as to the requested discovery.  Defendant reserves the right to supplement or revise any of these specific objections and responses.

**OBJECTIONS THAT APPLY TO ALL INTERROGATORIES**

1.      Defendant objects to all of Plaintiffs' Interrogatories as seeking irrelevant information, being overly broad and burdensome, and not being proportional to the needs of this case, as confirmed by Plaintiffs' prior position "that discovery is unnecessary in this case" and "Plaintiffs require no discovery[.]"  ECF No. 30 at 2, 3.

## SPECIFIC OBJECTIONS AND RESPONSES

### Interrogatory No. 1

Describe in full all policies, practices, and guidelines for prosecutions under 18 U.S.C. § 1030(a)(2)(C), including but not limited to formal policies and guidelines; how the policies or guidelines were created, implemented, amended, and how they are to be interpreted; and informal policies or regular practices of the Department of Justice whether or not formalized in a policy or guideline. To the extent any documents reflect policies or practices that were promulgated before June 29, 2015 but remain in force, such documents are covered within this request.

**RESPONSE:**  Defendant objects to this Interrogatory to the extent it seeks information regarding how Department of Justice policies, practices, or guidelines were created, as such information is protected by the deliberative-process privilege.

Defendant objects to this Interrogatory on vagueness grounds given Plaintiff's expansive definition of what is encompassed by the phrase "policies, practices, or guidelines."  Defendant does not construe this Interrogatory as encompassing Defendant's policies, practices, or guidelines that are generic to all prosecutions regardless of the crime being charged, such as the Principles of Federal Prosecution set forth in the Justice Manual (JM) (formerly the United States Attorney's Manual (USAM)), § 9-27.000, *available at* https://www.justice.gov/jm/jm-9-27000-principles-federal-prosecution.  Defendant construes this Interrogatory as seeking only those policies, practices, or guidelines specifically related to prosecutions under the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030.  To the extent Plaintiffs intended to seek information regarding all of the Department of Justice's generally applicable policies governing any type of criminal prosecution, such information would not be relevant to Plaintiffs' claims, would be overly burdensome to compile, and would not be proportional to the needs of this case.

Defendant further objects to this Interrogatory to the extent it is construed as seeking information outside the possession, custody, or control of the Department of Justice, Criminal Division, Computer Crime and Intellectual Property Section (CCIPS)—*e.g.*, information residing

-2-

solely within a local United States Attorney's Office (USAO).  There are 94 local USAOs and each one may have its own policies, practices, and guidelines for prosecuting particular offenses. Reviewing and/or cataloguing each of the 94 USAOs' individual policies, practices, and guidelines is not relevant to Plaintiffs' claims, would be overly burdensome, and is not proportional to the needs of this case.  Moreover, any local USAO policies, practices, and guidelines regarding when to charge particular offenses would almost certainly be protected by the law-enforcement privilege, the deliberative-process privilege, the attorney-client privilege, and/or the attorney work-product doctrine.  Notwithstanding these objections and without waiving such objections, CCIPS states that it is not currently aware of any local USAO with a policy, practice, or guideline addressing prosecutions specifically under 18 U.S.C. § 1030(a)(2)(C).

Subject to the above objections and clarifications, and pursuant to Fed. R. Civ. P. 33(d), Defendant also hereby responds by referring Plaintiffs to the following documents that have already been produced or will be produced:

- Memorandum from the Attorney General to the United States Attorneys and Assistant Attorneys General for the Criminal and National Security Divisions, *Intake and Charging Policy for Computer Crime Matters* (Sept. 11, 2014); previously filed at ECF No. 15-1;

- Procedures for CCIPS Consultations Regarding Charges under the Computer Fraud and Abuse Act (revised Nov. 2016); and

- CFAA Consultation Request Form (from DOJ intranet).

Defendant further states that the *Prosecuting Computer Crimes* manual, published by the Office of Legal Education, does not constitute a policy, practice, or guideline for prosecutions under 18 U.S.C. § 1030(a)(2)(C).  That manual was intended to be descriptive rather than prescriptive, and it does not govern how or when any Department of Justice prosecutor can or should bring charges.  The manual itself expressly states that "[t]his manual is intended as assistance, not authority"; it "do[es] not represent the official position of the Department of Justice

or any other agency"; and it "has no regulatory effect, confers no rights or remedies, and does not have the force of law or a U.S. Department of Justice directive." *Prosecuting Computer Crimes*, Preface, at v. Moreover, the manual is not currently kept up-to-date, and thus would not be considered to be currently "in force" even if it were otherwise a policy, practice, or guideline.

**Interrogatory No. 2**

State whether the Intake and Charging Policy for Computer Crime Matters issued by the Attorney General on September 11, 2014, ECF No. 15-1, remains in effect.

**RESPONSE:** Yes, that policy remains in effect.

**Interrogatory No. 3**

Identify by name, title, and division, all Department of Justice officials with the authority to issue indictments including charges under 18 U.S.C. § 1030(a)(2)(C) for violation of website or platform terms of service.

**RESPONSE:** Defendant objects to this Interrogatory to the extent it implies that DOJ officials themselves have "authority to issue indictments." Defendant interprets and construes that phrase as meaning entities with authority to present an indictment for consideration by a grand jury.

Defendant further objects to this Interrogatory to the extent it implies that "violation of website or platform terms of service" is by itself sufficient to give rise to criminal liability under 18 U.S.C. § 1030(a)(2)(C). That statute has multiple elements that must be satisfied before criminal liability exists, and "access[ing] a computer without authorization or exceed[ing] authorized access" is only one such element. Moreover, not every terms of service (ToS) violation is by itself sufficient to satisfy the element of "access[ing] a computer without authorization or exceed[ing] authorized access."

Notwithstanding and without waiving the foregoing objections, Defendant responds as follows:  The Department of Justice prosecutes criminal offenses through the 94 local USAOs and through other components with specialized areas of litigating authority.  Many of the Department of Justice's litigating Divisions have responsibility for prosecuting criminal matters, including, *inter alia*, the presentation of indictments before a grand jury.  As a practical matter, however, the only entities within the Department likely to be responsible for prosecuting violations of the CFAA are the USAOs, the Criminal Division, and the National Security Division.

In particular, the Department has established the Computer Hacking and Intellectual Property ("CHIP") program in USAOs and litigating Divisions.  The CHIP program is a network of experienced and specially-trained federal prosecutors who pursue computer crime and IP offenses.  Each USAO has one or more CHIP prosecutor.  CHIP attorneys have four major areas of responsibility including: (1) prosecuting computer crime and IP offenses; (2) serving as the district's legal counsel on matters relating to those offenses and the collection of electronic evidence; (3) training prosecutors and law enforcement personnel in the region; and (4) conducting public and industry outreach and awareness activities.

Additionally, CCIPS is a Section within the Criminal Division consisting of a specialized team of approximately forty prosecutors who are devoted to enforcing laws related to computer and IP crimes, including offenses under the CFAA. These attorneys prosecute criminal cases in partnership with U.S. Attorney's Offices across the nation, provide litigation support or advice to prosecutors and investigative agents in the field, resolve unique legal and investigative issues raised by emerging computer and telecommunications technologies, and help develop and implement the Department's overall enforcement strategy and legislative priorities as it pertains to

computer and intellectual property crime.   CCIPS also carries out the mandatory consultation
requirement for charges brought under the CFAA.

Finally, the National Security Division is also responsible for prosecuting violations of the
CFAA that affect national security.   *See* 28 C.F.R. § 0.72; USAM § 9-90.010; *id.* § 9-90.020
(requiring prior approval and consultation with the National Security Division for prosecutions
affecting national security, including for charges under 18 U.S.C. § 1030(a)(1)).

**Interrogatory No. 4**

Identify and set forth any and all indictments that any of the individuals identified in response to
Interrogatory No. 3 has issued under 18 U.S.C. § 1030(a)(2)(C) for violation of website or platform
terms of service.

**RESPONSE:**  Defendant objects to this Interrogatory to the extent it implies that DOJ officials
themselves have issued indictments.   Defendant interprets and construes this Interrogatory as
referring to indictments that a grand jury has returned at the request of a DOJ official.

Defendant further objects to this Interrogatory to the extent it implies that "violation of
website or platform terms of service" is by itself sufficient to give rise to criminal liability under
18 U.S.C. § 1030(a)(2)(C).   That statute has multiple elements that must be satisfied before
criminal liability exists, and "access[ing] a computer without authorization or exceed[ing]
authorized access" is only one such element.   Moreover, not every terms of service (ToS) violation
is by itself sufficient to satisfy the element of "access[ing] a computer without authorization or
exceed[ing] authorized access."

Defendant further objects to this Interrogatory as being vague with respect to what
constitutes a "violation of website or platform terms of service."   Defendant construes that phrase
as referring to violations of the Terms of Service of publicly available websites or platforms, and
not, for example, to violations of employer policies governing access to internal company

databases or information.  To the extent that Plaintiffs intended a broader interpretation that would encompass company policies regarding internal company databases, Defendant objects to the Interrogatory on relevance grounds, as such internal company platforms are fundamentally dissimilar from, and have no bearing on, Plaintiffs' conduct which occurs on publicly available websites.  Defendant further objects that reviewing and cataloguing such potential indictments would be overly broad, unduly burdensome, and not proportional to the needs of this case.

Defendant further objects to this Interrogatory to the extent it is construed as seeking information outside the possession, custody, or control of CCIPS, such as information residing solely within one of 94 local USAOs.  Requiring each of the 94 local USAOs to review and/or catalogue each of their prosecutions under § 1030(a)(2)(C), notwithstanding the information that has already been provided to CCIPS, would be overly broad, unduly burdensome, and not proportional to the needs of this case.

Defendant further objects to this Interrogatory to the extent it seeks information currently under seal pursuant to court order and/or Federal Rule of Criminal Procedure 6(e).

Notwithstanding and subject to the foregoing objections, and without waiving such objections, Defendant responds as follows:  CCIPS has reviewed its records as well as data from the Executive Office for United States Attorneys (EOUSA) regarding charges filed pursuant to 18 U.S.C. § 1030(a)(2)(C).  Based on that review, Defendant has not identified any responsive indictments.

**Interrogatory No. 5**

State whether the July 8, 2015, testimony of David M. Bitkower to the U.S. Senate's Subcommittee on Crime and Terrorism, ECF No. 10-3, reflects the Department of Justice's current position with respect to whether and how 18 U.S.C. § 1030 should be amended and, if it does not, state every respect in which the Department of Justice's current position differs from the views stated in that testimony.

**RESPONSE:** Defendant objects to this Interrogatory to the extent it seeks non-public information regarding internal DOJ or Executive Branch positions regarding potential legislation, as such information is protected by the deliberative-process privilege.

Subject to this objection, and pursuant to Fed. R. Civ. P. 33(d), Defendant hereby responds by referring Plaintiffs to the following documents that have already been produced or will be produced:

- Statement of Sujit Raman, Assoc. Deputy Attorney General, before the Subcomm. On Crime and Terrorism, U.S. Senate Judiciary Cmte. (Aug. 21, 2018); as well as associated hearing transcript.

- Statement of Adam S. Hickey, Deputy Assistant Attorney General, Nat'l Security Div., Dep't of Justice, before the U.S. Senate Judiciary Cmte. (June 12, 2018); as well as associated hearing transcript.

- Statement of Richard W. Downing, Acting Deputy Assistant Attorney General, Criminal Div., Dep't of Justice, before the U.S. Senate Judiciary Cmte. (May 18, 2016); as well as associated Questions for the Record.

- Statement of David Bitkower, Deputy Assistant Attorney General, Criminal Div., Dep't of Justice, Before the Subcomm. On Crime and Terrorism, U.S. Senate Judiciary Cmte. (July 8, 2015); as well as associated hearing transcript and Questions for the Record.

- Leslie Caldwell, Assistant Attorney General, Criminal Div., Dep't of Justice, *Prosecuting Privacy Abuses by Corporate and Government Insiders* (Mar. 16, 2015).

Defendant also refers Plaintiff to *Report of the Attorney General's Cyber Digital Task Force* (July 2, 2018), available at https://www.justice.gov/ag/page/file/1076696/download (also to be produced), which discusses potential amendments to the CFAA on pages 121-22.  That report was submitted to the Attorney General, and therefore may not represent the Attorney General's or the Department of Justice's final views on possible legislative amendments, but the report represents the views of the DOJ officials listed as authors.

**Interrogatory No. 6**

Describe in full Defendant's claimed interest in preventing violations of website or platform terms of service that consist in whole or in part of the creation of fictitious user accounts as part of academic research intended to test for potential discrimination by the website or platform.

**RESPONSE:**  Defendant objects to this Interrogatory to the extent it seeks information not in the possession, custody, or control of Defendant; given that the CFAA allows private websites to decide whether to prohibit the creation of fictitious user accounts, the private entities operating those websites may have information regarding the interests promoted by preventing violations of their ToS.

Defendant further objects to this Interrogatory to the extent it implies that "violations of website or platform terms of service" is by itself sufficient to give rise to criminal liability under 18 U.S.C. § 1030(a)(2)(C).  That statute has multiple elements that must be satisfied before criminal liability exists, and "access[ing] a computer without authorization or exceed[ing] authorized access" is only one such element.  Moreover, not every terms of service (ToS) violation is by itself sufficient to satisfy the element of "access[ing] a computer without authorization or exceed[ing] authorized access."

Subject to the foregoing objections, and without waiving such objections, Defendant responds as follows:  The Department of Justice has an interest in enforcing the CFAA, including prosecuting those who access protected computers without authorization or in a manner that exceeds authorized access.  In appropriate circumstances, this includes the prosecution of instances where the access is unauthorized as a result of contractual violations, such as ToS violations. Importantly, and as set forth in the Attorney General's *Intake and Charging Policy for Computer Crime Matters* (the "CFAA Charging Policy"), not all violations of a website's ToS is a violation of the statute or will rise to the level that warrants federal criminal prosecution. Instead, each proposed prosecution is assessed on a case-by-case basis for both sufficiency of the evidence and

to meet all of the elements of an offense and for the factors identified by Department policy, including those identified in the CFAA Charging Policy.

The Department of Justice rejects the implicit premise in Plaintiffs' Interrogatory Number 6—that private companies can (or should) distinguish between fake accounts created for academic purposes and fake accounts created for other purposes, and may only enforce their rights or ToS if they make such distinctions.  Indeed, this premise runs counter to Plaintiffs' own prior arguments, which have asserted that companies cannot be made aware of academic accounts on their platforms because doing so would jeopardize the integrity of the academic research. Moreover, private platforms should not be required to undertake the burden and expense of determining which fake accounts are harmless or socially beneficial versus which ones are malicious.  And to the extent Plaintiffs contend or assume that the CFAA itself should distinguish between socially beneficial accounts versus others, that would run counter to First Amendment values by rendering the CFAA not content-neutral.

It is also important to note that the Department of Justice does not enforce a private website or platform's ToS or prevent violations thereof.  Rather, the Department enforces the CFAA.  In so doing, the Department protects the freedom of private parties to decide how to design their platforms, to exclude unauthorized users from their systems, and to prohibit the creation of fake accounts on their network.  In this context, the Department's interests include the following:

1. **Promoting private property rights**. Just as owners of physical property have a right to define the terms of access to their property, so too do owners of private networks have a right to define the terms of access.  And when one accesses a private network in contravention of these terms, the property owner has a right to exclude that user. Accessing a protected computer without authorization to obtain information is simply theft occurring through cyber means.  Prosecuting egregious instances of such conduct accordingly promotes private property rights.

2. **Preventing economic harm**. There are several different economic harms potentially associated with fake profiles.  For example, private networks incur direct costs to

detect fake profiles and remove infringing accounts.  Indirectly, fake profiles may undermine the public's faith in a particular website, and website owners could experience economic harm in the form of lost business revenues or a devaluation of its shares as a result of reputational harm.

3. **Deterring fraud and other related criminal conduct**. Fake accounts are routinely used to perpetrate various types of fraud or other crimes.  Take for instance a large-scale scheme to sell vehicles online where the advertised vehicles do not actually exist and are never delivered to the victim purchasers. In order to commit this type of fraud, the perpetrator of the offense is likely opening multiple accounts on auction websites to lure victims.  These accounts will often be "fake" in that they do not contain legitimate user information on the account, usually in an attempt to frustrate law enforcement.  An additional example could be a scheme to create a fake account, interact with someone through that account, develop a relationship of trust, and then request money from that person.  Websites (and law enforcement) have an interest in removing fake accounts before these schemes come to fruition or a person is actually defrauded.

   The creation of fake accounts also often occurs in concert with, and in furtherance of, other criminal activity. For instance, a systems administrator of a network could surreptitiously create numerous fake accounts in advance of being terminated from employment, thereby allowing him or her to regain access to the system for illicit purposes.  Fake accounts could also be used to recruit children for harmful purposes, or to send threatening or harassing messages in an anonymous fashion.  The government interest in allowing websites to prevent fake accounts is particularly acute in the context of other criminal activity because many offenses under the CFAA can have an impact far beyond any particular computer.

4. **Protecting third-party users**. Fake accounts have the potential to make it difficult for legitimate users of a website to find authentic accounts, and distorts the user experience.  As mentioned above, there are often economic harms associated with fake accounts, some of which can be suffered by other website users who are worse off as a result of the fake accounts or who mistakenly rely on fake accounts.

5. **Protecting the integrity of data, websites, and platforms**. Fake accounts dilute the integrity of a website, which as mentioned above can result in economic harm to the website owner.  This dilution can also manipulate trends and results on the platform, harming the owner's to ability understand activity on its network and diminishing the experience of legitimate users.

6. **Protecting the public and national interests**.  Fake accounts can also be used to spread and promote misinformation, all while hiding the true identity of the person/entity operating the fake account.  This misinformation can, for example, be used to improperly sway public opinion on matters of national interest, or used to create public panic over a fictitious disaster or threat.  *See, e.g.*, *Report of the Attorney General's Cyber Digital Task Force* (July 2, 2018), at 1-15.

**Interrogatory No. 7**

Describe in full Defendant's claimed interest in preventing violations of website or platform terms of service that consist in whole or in part of providing false or misleading information as part of academic research intended to test for potential discrimination by the website or platform.

**RESPONSE:**  Defendant hereby incorporates by reference its specific objections and response to

Interrogatory No. 6.


**Interrogatory No. 8**

Describe in full Defendant's policies, guidelines, and practices—including but not limited to formal policies and guidelines; how the policies or guidelines were created, implemented, amended, and how they are to be interpreted; and informal policies or regular practices of the Department of Justice whether or not formalized in a policy or guideline—for ensuring that grantees of the Department of Justice Civil Rights Division's Fair Housing Testing program do not harm any third party in the course of their testing.

**RESPONSE:**  Defendant objects to this Interrogatory on relevancy grounds as it seeks information

from the Department of Justice's Civil Rights Division, which has no responsibility for enforcing

the CFAA, and thus has no connection to the legal issues implicated by this case.

Defendant further objects to this Interrogatory on relevancy grounds in that the Civil Rights

Division's Fair Housing Testing Program performs a statutorily codified law-enforcement role, not

private research.  The testing conducted by the Civil Rights Division's Fair Housing Testing

Program constitutes "lawfully authorized investigative . . . activity of a law enforcement agency

of the United States," which is expressly not prohibited by the CFAA.  *See* 18 U.S.C. § 1030(f).

Thus, nothing regarding the policies, guidelines, and practices of the Civil Rights Division's Fair

Housing Testing Program has any relevancy to the legal issues in this case.

Defendant further objects to this Interrogatory to the extent it is seeking information that

is protected by the law-enforcement privilege; disclosure of the Fair Housing Testing Program's

policies, practices, or guidelines could threaten the Department of Justice's statutorily codified law-enforcement activities. *See, e.g.*, 42 U.S.C. § 3614(a) (granting the Attorney General authority to "commence a civil action" to enforce the Fair Housing Act in response to a "pattern or practice" of discrimination); *see also* 28 C.F.R. § 0.50(a) (vesting the Civil Rights Division with "[e]nforcement of all Federal statutes affecting civil rights, including those pertaining to . . . housing"). Defendant further objects to this Interrogatory to the extent it seeks information regarding how Department of Justice policies, guidelines, or practices were created, as such information is protected by the deliberative-process privilege.

Defendant further objects to this Interrogatory as being impermissibly vague and misleading; the Civil Rights Division's Fair Housing Testing Program does not administer "grants" for the purpose of conducting testing and does not have "grantees." All Civil Rights Division Fair Housing Testing Program testing activities are undertaken by either Department of Justice employees or contractors who all operate under the training and direction of the Civil Rights Division's Fair Housing Testing Program.

For all of these reasons, Defendant is not capable of meaningfully responding to this Interrogatory, at least as currently drafted.

Dated: October 4, 2018

Respectfully Submitted,

JOSEPH H. HUNT
Assistant Attorney General

JOHN R. TYLER
Assistant Branch Director

DANIEL SCHWEI
Senior Trial Counsel (N.Y. Bar)
United States Department of Justice

Civil Division, Federal Programs Branch
1100 L Street NW, Room 12024
Washington, DC 20005
Tel.:     (202) 305-8693
Fax:      (202) 616-8470
Email:   daniel.s.schwei@usdoj.gov

Mailing Address:
Post Office Box 883
Washington, D.C. 20044

Courier Address:
1100 L Street NW, Room 12024
Washington, D.C. 20005

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I, Daniel Schwei, hereby certify that on October 4, 2018 I caused the foregoing Defendant's Objections and Responses to Plaintiffs' First Set of Interrogatories to be served by e-mail to Plaintiffs' counsel, Esha Bhandari and Rachel Goodman, consistent with their written consent to accept service of discovery documents by electronic mail.

Daniel Schwei

**VERIFICATION**

I, John T. Lynch, Jr., am the Chief of the Computer Crime and Intellectual Property Section (CCIPS) of the Criminal Division of the United States Department of Justice.  I believe, based on reasonable inquiry that the foregoing answers to Interrogatory Nos. 1-7 are true and correct to the best of my knowledge, information, and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: October 4, 2018

John T. Lynch, Jr.

-16-