IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHRISTIAN SANDVIG,
*et al.*,

        Plaintiffs,

   v.

WILLIAM P. BARR, in his official capacity
as Attorney General of the United States,

        Defendant.

Case No. 1:16-cv-1368 (JDB)

# Defendant's Exhibit 18:

Defendant's Supplemental Objection and Responses to Plaintiffs' Interrogatory Nos. 6 and 7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISTIAN SANDVIG, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>JEFFERSON B. SESSIONS, III, in his official capacity as Attorney General of the United States,<br><br>　　　　　Defendant. | Case No. 1:16-cv-1368 (JDB) |

**DEFENDANT'S SUPPLEMENTAL OBJECTION AND RESPONSE TO PLAINTIFFS' INTERROGATORY NOS. 6 AND 7**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant hereby supplements its prior objections and response to Plaintiffs' Interrogatories Nos. 6 and 7. All prior objections and responses are incorporated by reference herein.

**Interrogatory No. 6**

Describe in full Defendant's claimed interest in preventing violations of website or platform terms of service that consist in whole or in part of the creation of fictitious user accounts as part of academic research intended to test for potential discrimination by the website or platform.

**INITIAL RESPONSE:** Defendant objects to this Interrogatory to the extent it seeks information not in the possession, custody, or control of Defendant; given that the CFAA allows private websites to decide whether to prohibit the creation of fictitious user accounts, the private entities operating those websites may have information regarding the interests promoted by preventing violations of their ToS.

Defendant further objects to this Interrogatory to the extent it implies that "violations of website or platform terms of service" is by itself sufficient to give rise to criminal liability under 18 U.S.C. § 1030(a)(2)(C). That statute has multiple elements that must be satisfied before criminal liability exists, and "access[ing] a computer without authorization or exceed[ing] authorized access" is only one such element. Moreover, not every terms of service (ToS) violation is by itself sufficient to satisfy the element of "access[ing] a computer without authorization or exceed[ing] authorized access."

Subject to the foregoing objections, and without waiving such objections, Defendant responds as follows: The Department of Justice has an interest in enforcing the CFAA, including prosecuting those who access protected computers without authorization or in a manner that exceeds authorized access. In appropriate circumstances, this includes the prosecution of instances where the access is unauthorized as a result of contractual violations, such as ToS violations. Importantly, and as set forth in the Attorney General's *Intake and Charging Policy for Computer Crime Matters* (the "CFAA Charging Policy"), not all violations of a website's ToS is a violation of the statute or will rise to the level that warrants federal criminal prosecution. Instead, each proposed prosecution is assessed on a case-by-case basis for both sufficiency of the evidence and to meet all of the elements of an offense and for the factors identified by Department policy, including those identified in the CFAA Charging Policy.

The Department of Justice rejects the implicit premise in Plaintiffs' Interrogatory Number 6—that private companies can (or should) distinguish between fake accounts created for academic purposes and fake accounts created for other purposes, and may only enforce their rights or ToS if they make such distinctions. Indeed, this premise runs counter to Plaintiffs' own prior arguments, which have asserted that companies cannot be made aware of academic accounts on

their platforms because doing so would jeopardize the integrity of the academic research. Moreover, private platforms should not be required to undertake the burden and expense of determining which fake accounts are harmless or socially beneficial versus which ones are malicious.  And to the extent Plaintiffs contend or assume that the CFAA itself should distinguish between socially beneficial accounts versus others, that would run counter to First Amendment values by rendering the CFAA not content-neutral.

It is also important to note that the Department of Justice does not enforce a private website or platform's ToS or prevent violations thereof.  Rather, the Department enforces the CFAA.  In so doing, the Department protects the freedom of private parties to decide how to design their platforms, to exclude unauthorized users from their systems, and to prohibit the creation of fake accounts on their network.  In this context, the Department's interests include the following:

1. **Promoting private property rights**. Just as owners of physical property have a right to define the terms of access to their property, so too do owners of private networks have a right to define the terms of access.  And when one accesses a private network in contravention of these terms, the property owner has a right to exclude that user. Accessing a protected computer without authorization to obtain information is simply theft occurring through cyber means.  Prosecuting egregious instances of such conduct accordingly promotes private property rights.

2. **Preventing economic harm**. There are several different economic harms potentially associated with fake profiles.  For example, private networks incur direct costs to detect fake profiles and remove infringing accounts.  Indirectly, fake profiles may undermine the public's faith in a particular website, and website owners could experience economic harm in the form of lost business revenues or a devaluation of its shares as a result of reputational harm.

3. **Deterring fraud and other related criminal conduct**. Fake accounts are routinely used to perpetrate various types of fraud or other crimes.  Take for instance a large-scale scheme to sell vehicles online where the advertised vehicles do not actually exist and are never delivered to the victim purchasers. In order to commit this type of fraud, the perpetrator of the offense is likely opening multiple accounts on auction websites to lure victims.  These accounts will often be "fake" in that they do not contain legitimate user information on the account, usually in an attempt to frustrate law enforcement. An additional example could be a scheme to create a fake account, interact with someone through that account, develop a relationship of trust, and then

request money from that person.  Websites (and law enforcement) have an interest in removing fake accounts before these schemes come to fruition or a person is actually defrauded.

The creation of fake accounts also often occurs in concert with, and in furtherance of, other criminal activity.  For instance, a systems administrator of a network could surreptitiously create numerous fake accounts in advance of being terminated from employment, thereby allowing him or her to regain access to the system for illicit purposes.  Fake accounts could also be used to recruit children for harmful purposes, or to send threatening or harassing messages in an anonymous fashion.  The government interest in allowing websites to prevent fake accounts is particularly acute in the context of other criminal activity because many offenses under the CFAA can have an impact far beyond any particular computer.

4. **Protecting third-party users**. Fake accounts have the potential to make it difficult for legitimate users of a website to find authentic accounts, and distorts the user experience.  As mentioned above, there are often economic harms associated with fake accounts, some of which can be suffered by other website users who are worse off as a result of the fake accounts or who mistakenly rely on fake accounts.

5. **Protecting the integrity of data, websites, and platforms**. Fake accounts dilute the integrity of a website, which as mentioned above can result in economic harm to the website owner.  This dilution can also manipulate trends and results on the platform, harming the owner's to ability understand activity on its network and diminishing the experience of legitimate users.

6. **Protecting the public and national interests**.  Fake accounts can also be used to spread and promote misinformation, all while hiding the true identity of the person/entity operating the fake account.  This misinformation can, for example, be used to improperly sway public opinion on matters of national interest, or used to create public panic over a fictitious disaster or threat.  *See, e.g.*, *Report of the Attorney General's Cyber Digital Task Force* (July 2, 2018), at 1-15.

**SUPPLEMENTAL OBJECTION AND RESPONSE:**  Defendant further objects to this Interrogatory as speculative and hypothetical.  As Defendant noted in its initial response, potential CFAA enforcement matters are considered on a case-by-case basis with reference to the specific facts and conduct at issue.  The Interrogatory here, however, refers to "academic research" and "websites or platforms" generally, but does not disclose any specific facts about, *inter alia*, how the academic research is being conducted, how the websites or platforms being tested are designed, or how the research may affect third-parties.  Accordingly, given the abstract and generalized

nature of Plaintiffs' Interrogatory, it is not possible for Defendant to describe precisely which interests are implicated by any particular form of academic research, or any other particular conduct involving the creation of fictitious user accounts.

Notwithstanding this objection (and Defendant's initial objections), and without waiving such objections, Defendant further responds as follows: All of the above interests are implicated by Defendant's ability to enforce the CFAA with respect to violations of ToS prohibiting the creation of false accounts, including when those false accounts are created as part of academic research intended to test for potential discrimination by a website or platform.

Many of the interests discussed above are directly implicated by such ToS violations, as the effects of such ToS violations are frequently the same regardless of the purpose for which a fake account is created. For example, when a fake account is created in violation of a website's ToS, regardless of whether the fake account is well-intentioned or not—*i.e.*, regardless of whether it is being used for academic research regarding potential discrimination or some other purpose— the fake account still undermines private parties' property rights, and can still create economic harms, negatively affect third-party users, and undermine the integrity of a website or platform.

Moreover, all of the above interests are implicated indirectly by Defendant's ability to enforce the CFAA with respect to prohibitions on the creation of fake accounts, regardless of the claimed motivation of the unauthorized person creating the fake accounts. If the First Amendment were construed to prohibit Defendant from enforcing the CFAA against academic researchers who violate websites' ToS restricting the creation of fake accounts (as Plaintiffs suggest), that could threaten Defendant's ability to enforce the CFAA against other individuals not performing academic research but nonetheless engaging in conduct (allegedly) protected by the First Amendment—*e.g.*, an individual who creates fake accounts for the purpose of manipulating trends

on websites in order to promote a particular viewpoint or product over different ones; or an individual creating fake accounts as part of the initial steps of a scheme to defraud, or a plan to recruit children for harmful purposes. (Similarly, as discussed above, such a construction of the First Amendment could also threaten private parties' ability to enforce their ToS against such individuals.) Such a construction could also decrease the CFAA's deterrent value with respect to individuals who might create fake accounts in violation of websites' ToS for more directly harmful purposes. Thus, by preserving Defendant's ability to enforce the CFAA in all circumstances covered by the CFAA's terms, that indirectly re-enforces all of the above interests encompassed by the CFAA.

It is true that some of the above interests are implicated every time a website's ToS are violated (*e.g.*, undermining private property rights). Additionally, some of the above interests are implicated any time there is a violation of a website's ToS prohibiting the creation of fake accounts (*e.g.*, preventing economic harm, protecting third-party users, and protecting the integrity of websites and platforms). The fact that some of these interests are implicated generally, however, does not discount that the interests also apply in the narrower circumstances posed by Plaintiffs' Interrogatory—*i.e.*, violations of ToS involving the creation of fictitious user accounts as part of academic research intended to test for potential discrimination by a website or platform. As discussed above, all of the specified interests are implicated, directly and/or indirectly, by Defendant's ability to enforce the CFAA with respect to ToS violations involving the creation of fake accounts.

**Interrogatory No. 7**

Describe in full Defendant's claimed interest in preventing violations of website or platform terms of service that consist in whole or in part of providing false or misleading information as part of academic research intended to test for potential discrimination by the website or platform.

**INITIAL RESPONSE:**  Defendant hereby incorporates by reference its specific objections and response to Interrogatory No. 6.

**SUPPLEMENTAL OBJECTION AND RESPONSE:**  Defendant hereby incorporates by reference its supplemental objection and response to Interrogatory No. 6.

Dated:  October 17, 2018

Respectfully Submitted,

JOSEPH H. HUNT
Assistant Attorney General

JOHN R. TYLER
Assistant Branch Director

*/s/ Daniel Schwei*

DANIEL SCHWEI
Senior Trial Counsel (N.Y. Bar)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Room 12024
Washington, DC 20005
Tel.:    (202) 305-8693
Fax:    (202) 616-8470
Email:   daniel.s.schwei@usdoj.gov

Mailing Address:
Post Office Box 883
Washington, D.C. 20044

Courier Address:
1100 L Street NW, Room 12024
Washington, D.C. 20005

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I, Daniel Schwei, hereby certify that on October 17, 2018 I caused the foregoing Defendant's Supplemental Objection and Response to Plaintiffs' Interrogatory Nos. 6 and 7 to be served by e-mail to Plaintiffs' counsel, Esha Bhandari and Rachel Goodman, consistent with their written consent to accept service of discovery documents by electronic mail.

_____
Daniel Schwei

-9-

## VERIFICATION

I, John T. Lynch, Jr., am the Chief of the Computer Crime and Intellectual Property Section (CCIPS) of the Criminal Division of the United States Department of Justice. I believe, based on reasonable inquiry that the foregoing supplemental answers to Interrogatory Nos. 6-7 are true and correct to the best of my knowledge, information, and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: October 17, 2018   _____
                                            John T. Lynch, Jr.