IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISTIAN SANDVIG, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM P. BARR, in his official capacity as Attorney General of the United States, <br><br> Defendant. | Case No. 1:16-cv-1368 (JDB) |

**DEFENDANT'S RESPONSE TO COURT'S ORDER**
**FOR CLARIFICATION, ECF No. 63**

Defendant respectfully submits this Response to the Court's recent Order for Clarification, ECF No. 63. As discussed further below, the issues identified by the Court are largely irrelevant to Plaintiffs' sole remaining claim. To the extent they bear on the matters before the Court for decision, these issues only further underscore that this Court lacks jurisdiction over Plaintiffs' claims, and that those claims are meritless.

Plaintiffs' sole remaining claim is an as-applied First Amendment claim pertaining to the creation of fictitious and/or misleading accounts, *see* MTD Op. (ECF No. 24) at 35-38, and Defendant addresses the Court's questions in the context of that claim. Defendant respectfully submits that these issues do not warrant reconsideration of any of the previously dismissed claims, particularly at this stage, and given that Plaintiffs have not requested reconsideration of any such claims. *See* Fed. R. Civ. P. 56(f) (requiring "notice and a reasonable time to respond" before granting summary judgment "on grounds not raised by a party"). Moreover, Defendant does not understand the Court's questions as pertaining to the potential conduct underlying any of those previously dismissed claims. *See* MTD Op. at 32-33.

## I. QUESTIONS ONE AND THREE – THE MEANING OF STATUTORY PHRASES

The Court's first and third questions ask about the meaning of the statutory phrases "accesses a computer without authorization" and "exceeds authorized access" as they appear within 18 U.S.C. § 1030. At the outset, Defendant respectfully submits that the Court need not parse the meaning of these phrases, because Plaintiffs do not dispute that their conduct satisfies at least one of those phrases, *see* Part II, *infra*, and satisfying only one phrase is sufficient for CFAA liability to exist. *See Musacchio v. United States*, 136 S. Ct. 709, 714 (2016). Nonetheless, the Government responds to the Court's questions as follows.

In general, the Government's position is that a person "accesses a computer without authorization" when the person wholly lacks permission to access the computer, and a person

"exceeds authorized access" when the person has permission to access the computer but goes beyond the authorized scope of that permission. *See Musacchio*, 136 S. Ct. at 713 ("The statute thus provides two ways of committing the crime of improperly accessing a protected computer: (1) obtaining access without authorization; and (2) obtaining access with authorization but then using that access improperly."). Thus, liability for accessing a computer "without authorization" will generally exist when a person "has no permission to access a computer or when such permission has been revoked explicitly[.]" *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016). Conversely, a person "exceeds authorized access" when the individual "is authorized to use a computer for certain purposes *but goes beyond those limitations*[.]" *Pulte Homes, Inc. v. Laborers' Int'l Union of N. Am.*, 648 F.3d 295, 304 (6th Cir. 2011) (quoting *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1133 (9th Cir. 2009)).

To be sure, particularly when interpreting the phrase "exceeds authorized access," courts have differed regarding what facts are relevant. *See* MTD Op. at 24-33; *compare, e.g.*, *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012) (en banc) ("[W]e hold that the phrase 'exceeds authorized access' in the CFAA does not extend to violations of use restrictions."), *and WEC Carolina Energy Sols. LLC v. Miller*, 687 F.3d 199, 206 (4th Cir. 2012) (holding that "exceeds authorized access" does not apply to "obtaining or altering information *in a manner* that is not authorized," but "only when an individual . . . obtains or alters information on a computer beyond that which he is authorized to access" (emphasis added)); *with United States v. Rodriguez*, 628 F.3d 1258, 1263 (11th Cir. 2010) (holding that individual exceeded authorized access by accessing information in database for personal reasons, when "[t]he policy of the Administration is that use of databases to obtain personal information is authorized only when done for business reasons"), *and United States v. John*, 597 F.3d 263, 272 (5th Cir. 2010) ("[T]he concept of 'exceeds authorized

access' may include exceeding the purposes for which access is 'authorized.'"). The Government respectfully submits that, on this question, the broader interpretation adopted by the *Rodriguez* and *John* decisions is correct. As explained at the prior motion-to-dismiss hearing, this broader approach accounts for the fact that authorization to access a computer in *some* circumstances does not necessarily constitute authorization to access the computer in *all* circumstances. *See* MTD Tr. at 19-24; *John*, 597 F.3d at 272.

In any event, the Court need not resolve this debate. As discussed below, *see* Part II, *infra*, this Court has already concluded—and the parties have not challenged—that Plaintiffs' actions in creating fictitious and/or misleading accounts can qualify for liability under the CFAA.

## II. QUESTIONS TWO AND FOUR – PLAINTIFFS' CONDUCT

The Court's second and fourth questions ask "what specific anticipated actions, if any, by plaintiffs" would constitute "access[ing] a computer without authorization" or "exceed[ing] authorized access." This Court has already concluded that Plaintiffs' conduct on their sole remaining claim—*i.e.*, creating fake or misleading accounts to obtain access to information that is not otherwise available—would potentially qualify as exceeding authorized access. That conclusion assumes, however, that private websites have enacted genuine access restrictions prohibiting the creation of such accounts, which Plaintiffs have not demonstrated here.

First, this Court has already concluded that, as a general matter, creating fictitious and/or misleading accounts can constitute "exceeding authorized access" under the CFAA. *See* MTD Op. at 32-33 ("Unlike plaintiffs' other conduct, which occurs on portions of websites that any visitor can view, creating false accounts allows Mislove and Wilson to access information on those sites that is both limited to those who meet the owners' chosen authentication requirements and targeted to the particular preferences of the user."). Neither party has challenged that conclusion. *See, e.g.*, Pls.' Reply Br. (ECF No. 54) at 11 n.3 (embracing this analysis). Thus, there is no basis for re-

evaluating this Court's prior conclusion at this stage.

That conclusion, moreover, is consistent with the statutory frameworks discussed above. Even if Plaintiffs were authorized to access employment websites in the first instance, by creating fictitious and/or misleading accounts on those sites, Plaintiffs will have gained access to information that is not otherwise publicly available. Regardless of whether the Court were inclined to adopt a broader or narrower interpretation of "exceeds authorized access," Plaintiffs' conduct would still qualify for CFAA liability. *See WEC Carolina Energy Sols.*, 687 F.3d at 204 (a person "'exceeds authorized access' when he has approval to access a computer, but uses his access to obtain or alter information that falls outside the bounds of his approved access"); *hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 1003 (9th Cir. 2019) (holding that a person may access a computer "without authorization" if they obtain access to information that is not publicly available by "circumvent[ing] a computer's generally applicable rules regarding access permissions, such as username and password requirements").

A key assumption in the above analysis, however, is that the private websites Plaintiffs intend to access have prohibited the creation of fake accounts, and that those prohibitions are genuine access restrictions. As the Government explained in its summary-judgment briefing, not every ToS necessarily rises to the level of a genuine access restriction. *See, e.g.*, Gov't MSJ Br. (ECF No. 51) at 18-19 n.3. For example, if a website's ToS simply say that "we reserve the right to disable your account if you provide untruthful information when creating your account," then that likely would *not* be a genuine access restriction—*i.e.*, the website would simply be providing notice about a possible *future* enforcement action, not conditioning *present* access on the provision of truthful information. On the other hand, if a website's ToS say that "your access to the private portions of this website are expressly conditioned on the provision of truthful information when

creating your account, and your access is hereby denied if your account contains fictitious and/or misleading information," then that likely *would* be a genuine access restriction—because it clearly conditions present access on the provision of truthful information. *See* MSJ Hr'g Tr. at 54-55.

Here, Plaintiffs have not demonstrated that any of the websites they intend to access for their research actually prohibit the creation of fake accounts and that such prohibitions are genuine access restrictions. That is because Plaintiffs' research plans are still inchoate and not yet fully defined. As Plaintiffs admit, they have not yet identified "all such websites that they may wish to test, nor what their terms of service may be on any future date." Pls.' Resp. to D-SMF (ECF No. 54-1) ¶ 42 (undisputed). Accordingly, it is entirely speculative whether their research would actually involve the creation of fake accounts on websites that genuinely condition access on the provision of truthful information.

On this record, then, it is impossible to determine which, if any, of Plaintiffs' actions would actually constitute "accessing without authorization" or "exceeding authorized access." For that same reason, Plaintiffs have also failed to demonstrate Article III jurisdiction over their claims: unless and until Plaintiffs demonstrate that their research would involve creating fictitious accounts in violation of a genuine access restriction, they have not established that their research plan would even involve a violation of the CFAA.

### III.   QUESTION FIVE – MEANING OF "ENTITLED"

The Court's fifth question asks about the meaning of the word "entitled" in the statutory definition of "exceeds authorized access." *See* 18 U.S.C. § 1030(e)(6) (defining the phrase as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter").

As the Government has explained in other cases, the use of the word "entitled" supports the broader interpretation of the phrase "exceeds authorized access" discussed above, in which all

relevant facts (including policies set by the computer owners) may be considered in determining the scope of a person's authorized access. *See* Part I, *supra*. That is because the ordinary meaning of "entitle" is to "furnish with a right." Webster's New Riverside University Dictionary 435. Because the computer owner furnishes an individual with the right to access its systems and obtain information from them, explicit policies restricting that right determines when an individual "exceeds authorized access." Thus, for example, where an employer allows employees to obtain information from sensitive databases only for business use, the CFAA permits prosecution of an employee who breaches that restriction by seeking out information for personal use. *Cf. Rodriguez*, 658 F.3d at 1263; *John*, 597 F.3d at 271; *but see United States v. Valle*, 807 F.3d 508, 524-28 (2d Cir. 2015); *Nosal*, 676 F.3d at 857; *WEC Carolina Energy Sols.*, 687 F.3d at 206.

There is no need for this Court to address this issue, however, because as discussed above, there is no dispute that, under both the broader and narrower frameworks for interpreting the statutory language, Plaintiffs' conduct—*i.e.*, creating fictitious accounts in order to view information on private websites that is not otherwise publicly available—would constitute "exceed[ing] authorized access," assuming that the relevant websites have genuine access restrictions prohibiting the creation of such accounts. *See* Part II, *supra*. Regardless of whether "entitled" is interpreted to mean "furnish with a right" (as the Government suggests), or is viewed more narrowly as simply being "a synonym for 'authorized,'" *Nosal*, 676 F.3d at 857, there is no dispute that Plaintiffs' conduct relevant to their sole remaining claim can constitute "exceed[ing] authorized access," as this Court has already concluded. *See* MTD Op. at 32-33.

That said, the use of the word "entitled" is relevant to a different issue in this case. At the hearing on the parties' cross-motions for summary judgment, the Court inquired as to whether the CFAA incorporated conceptions of private property. *See* MSJ Hr'g Tr. at 45-46. The use of the

word "entitle," in addition to the concept of "authorization," necessarily incorporates conceptions of private ownership—because absent private ownership, there is no person with a superior right to the computer (such as an owner) who could "entitle" or "authorize" others to access information on the computer. *See* Black's Law Dictionary, 11th ed. 2019 (defining "entitle" as "[t]o grant a legal right to or qualify for," and "authorize" as "[t]o give legal authority; to empower"). And just as the owner of the computer has the right to *authorize* others to access information, that person also has the right to *exclude* others from doing so. Thus, as the Government argued in its summary-judgment briefs, the relevant exclusions here are private choices made by private parties (*i.e.*, the computer owners), and therefore those decisions are not subject to First Amendment scrutiny—which forecloses Plaintiffs' claims here. *See Lloyd Corp. v. Tanner*, 407 U.S. 551 (1972); *Hudgens v. NLRB*, 424 U.S. 507 (1976); *see also PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 82 (1980) (noting, in a First Amendment context, that "[i]t is true that one of the essential sticks in the bundle of property rights is the right to exclude others"); Gov't MSJ Br. at 20-35; Gov't Reply at 9-16.

## CONCLUSION

The Court need not address the above statutory issues because they are irrelevant to resolution of the parties' cross-motions for summary judgment on Plaintiffs' sole remaining claim. If anything, however, the above issues further demonstrate that Plaintiffs' claim is not ripe for judicial consideration under Article III, and, in any event, their claim fails on the merits because it seeks to challenge private parties' decisions about who is allowed to access private property.

Dated: December 13, 2019        Respectfully submitted,

                                                               JOSEPH H. HUNT
                                                                Assistant Attorney General

                                                                 BRIGHAM J. BOWEN
                                                                Assistant Branch Director

-8-

        */s/ Daniel Schwei*
        DANIEL SCHWEI (N.Y. Bar)
        Senior Trial Counsel
        United States Department of Justice
        Civil Division, Federal Programs Branch
        1100 L Street NW, Room 12024
        Washington, DC 20530
        Tel.:    (202) 305-8693
        Fax:    (202) 616-8460
        E-mail:  daniel.s.schwei@usdoj.gov

        <u>Mailing Address:</u>
        Post Office Box 883
        Washington, D.C. 20044

        <u>Courier Address:</u>
        1100 L Street NW, Room 12024
        Washington, D.C. 20005

        *Counsel for Defendant*